Commonwealth ex rel. O'Lock, Appellant, *v.*
Rundle.

Submitted September 30, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*John O'Lock,* appellant, in propria persona.

*Earl Richard Etzweiler,* Assistant District Attorney, and *Martin H. Lock,* District Attorney, for appellee.

OPINION BY MR. JUSTICE ROBERTS, November 10, 1964:

In 1944, John O'Lock was indicted on numerous bills charging various felonious offenses, including several burglaries. Without the assistance of counsel at any stage, he entered pleas of guilty to all charges and was sentenced to an aggregate of 20½ to 41 years imprisonment.

In 1951, with the aid of counsel, O'Lock filed a petition for writ of habeas corpus, the basic allegation of which was that he was unrepresented by counsel at the time he entered his guilty pleas. After an extensive hearing in 1952, the Court of Common Pleas of Dauphin County denied the petition on the then applicable ground that since neither a capital offense nor prejudice to petitioner was involved, counsel was not required.

In 1963, without counsel, petitioner again sought the issuance of a writ of habeas corpus. This petition was substantially similar to the 1951 petition, again raising particularly lack of counsel at the 1944 guilty

pleas.[1] However, O'Lock was now able to cite *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792 (1963), in support of his contention that his lack of counsel constituted a deprivation of due process of law.

The Court of Common Pleas of Dauphin County denied the present petition without hearing. After acknowledging the similarity between the 1951 and 1963 petitions, the court concluded that the *Gideon* case was not to be applied retroactively.[2] It went on to hold that, even if the *Gideon* rule were to be so applied, the rule had no bearing on this case because the petitioner had entered pleas of guilty. The court further held that petitioner would have waived any right to counsel because a plea of guilty would act as an automatic waiver of counsel. Waiver was also found in the fact that petitioner did not request counsel, even though he had been before courts previously. Additionally, the court noted that, in its view, the lack of counsel did not result in prejudice to this petitioner.[3]

---

[1] The petition also raised numerous other issues, none of which need be considered in view of our disposition of this case.

[2] See note 4 infra.

[3] Excerpt from the opinion of the court of common pleas: "In the Gideon case the defendant entered a plea of not guilty, requested but was refused counsel, and was required to defend himself before a jury. In the cases involving this relator he entered guilty pleas to all of the charges thus eliminating any jury trial and waived his right to be represented by counsel.

"While the Gideon case holds that a right to counsel is essential to a fair trial, a case heard by a judge upon a plea of guilty we do not consider as a trial. Here the relator knew the nature of his acts, and the crimes for which he was charged, and by his pleas of guilty and detailed confessions he acknowledged before the trial judge that he did not wish to be tried and did not wish to defend himself. He thereby was willing to accept whatever consequences were occasioned by his acts. . . .

"The relator having known what he was charged with and having been experienced in criminal procedures, never made any

On appeal, the Superior Court affirmed per curiam. Our Court granted allocatur to consider the constitutional issue thus raised.

It is quite evident that the dispositions below were erroneous and that petitioner was not accorded his constitutional right to the assistance of counsel. A scrutiny of the complete record, including transcripts of the pleas and sentencing proceeding in 1944 and of the comprehensive 1952 habeas corpus hearing on the 1951 petition, reveals that to remand the petition for a hearing now is unnecessary. Only one result is indicated. The only proper disposition of this case on its merits appears so clearly from the record that appropriate relief should be granted promptly.

As the quoted portion of the opinion in the court below indicates, reliance was placed on this Court's view, expressed in *Commonwealth ex rel. Craig v. Banmiller,* 410 Pa. 584, 189 A. 2d 875 (1963), that the *Gideon* decision had no retroactive application. We have subsequently held that our conclusion there was

---

request for counsel at any time in the proceedings, and therefore, waived his right for counsel.

"The Pennsylvania Supreme Court has held in Commonwealth ex rel. Craig v. Banmiller, 410 Pa. 584 (1963), that the Gideon case holding is prospective rather than retroactive. In view of the facts in this particular case we must follow the dictates of the Supreme Court of Pennsylvania.

"As to his lack of counsel we do not believe that it could in any event have been of benefit to the relator because he had made admissions or confessions to all of the charges brought against him. A careful reading of the testimony taken at his first hearing on a writ of habeas corpus and the testimony taken at the time of his sentencing, will show that he was deprived of no privilege or right under the circumstances of this case. We believe that the sentences imposed were fair sentences under all the circumstances, and that had he been represented by counsel it would not have changed the results in any degree whatsoever." 81 Dauph. Co. 46, 51-53 (1963).

incorrect.[4] *Commonwealth ex rel. McCray v. Rundle,*
415 Pa. 65, 202 A. 2d 303 (1964). Although, at present, there is no explicit holding by the Supreme Court
of the United States on the matter,[5] it now appears
that the *Gideon* principle is to be applied to convictions prior to the date of the decision in *Gideon v.
Wainwright.* E.g., *United States ex rel. Craig v. Myers,*
329 F. 2d 856 (3d Cir. 1964) ; *United States ex rel.
Durocher v. LaVallee,* 330 F. 2d 303 (2d Cir.) ; cert.
denied 377 U.S. 998, 84 S. Ct. 1921 (1964) ; *Geather v.
State,* 165 So. 2d 229 (Fla. Dist. Ct. of App. 1964) ;
*In re Palmer,* 371 Mich. 656, 124 N.W. 2d 773 (1963) ;
see the memorandum decisions of the Supreme Court
of the United States, e.g., 372 U.S. 766-70, 773-77, 779-82, 83 S. Ct. 1103-07 (1963) (vacating state court judgments and remanding for further consideration in the
light of *Gideon*).

*Gideon* interprets the Sixth Amendment guarantee
of right to counsel, embodied as it is in the Fourteenth
Amendment to the Constitution of the United States,
as requiring that counsel be afforded to indigent defendants in the state courts.[6] And the ruling of *White
v. Maryland,* 373 U.S. 59, 83 S. Ct. 1050 (1963), is
that counsel must be afforded at every critical stage
where rights may be preserved or lost in the criminal
proceedings. That petitioner was not prejudiced by
the absence of counsel is immaterial. Ibid.

Attempts to limit *Gideon* to situations where counsel has been requested but refused, or where trial has
been had on a plea of not guilty, are unsound. See

---

[4] At the time the lower court dismissed the petition, it was
bound by our decision in *Craig.*

[5] See the dissenting opinions of Mr. Justice HARLAN in *La-Vallee v. Durocher,* 377 U.S. 998, 84 S. Ct. 1921 (1964) ; *Pickelsimer v. Wainwright,* 375 U.S. 2, 84 S. Ct. 80, 81 (1963).

[6] The scope of the *Gideon* ruling has not yet been made entirely clear. It remains to be decided whether counsel must be

*Doughty v. Maxwell,* 376 U.S. 202, 84 S. Ct. 702 (1964), reversing *Doughty v. Sacks,* 175 Ohio St. 46, 191 N.E. 2d 727 (1963) (plea of guilty); *United States ex rel. Durocher v. LaVallee,* supra, at 307. We find no difficulty in characterizing a hearing on a guilty plea as a critical stage in the proceedings against the accused. Surely, such a hearing is a stage where rights may be preserved or lost. It is, in our view, as critical a stage for the accused as any he faces in the criminal proceedings against him.[7] In most instances, it may be the last crucial step in the proceedings, the procedural moment when nearly all significant rights are adjudicated, save those available to the accused on appeal or through collateral attack.

The hearing involves procedures and techniques with which only legal counsel will be familiar. It often may be a technical and intricate affair, and unrepresented laymen may not be expected to either fully grasp the intricacies of the proceedings or be aware of possible defenses. Nor may it be assumed that, in the absence of counsel, the accused is in a position to effectively present evidence and other considerations in mitigation of sentence. Only with the assistance of counsel may the accused be expected to know the defenses and other privileges available to him. "Of all of the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other rights he may have." Schaefer, Federalism and State Criminal Procedure, 70 Harv. L. Rev. 1, 8 (1956).

---

supplied in all classes of cases or only in those involving serious offenses. Whatever the ultimate scope, it is clear that the offenses involved here are within the *Gideon* rule.

[7] "A trial judge knows without elaboration that the moment when a defendant is called upon to plead is the most critical stage in every felony criminal proceeding." *United States ex rel. Thomas v. Murphy,* 227 F. Supp. 742, 744 (N.D.N.Y. 1964).

"Bewildered by the mystifying language in which legal documents are cast, [the accused] . . . will generally be incapable 'of determining for himself whether the indictment is good or bad.' Overwhelmed by the seemingly overpowering resources of the state, he may elect to plead guilty because he feels woefully ill-equipped to prepare his defense, 'even though he have a perfect one.' Unlike the defendant financially able to retain an attorney, he may be unaware of legal defects and complexities in the charges against him, and plead guilty to an offense which he has not committed." *United States ex rel. Durocher v. LaVallee,* supra, at 308.

"The right to counsel is not a right confined to representation during the trial on the merits." *Moore v. Michigan,* 355 U.S. 155, 160, 78 S. Ct. 191, 194 (1957).

We hold that our courts must apply the *Gideon* principle to a plea of guilty. *United States ex rel. Durocher v. LaVallee,* supra; *United States ex rel. Craig v. Myers,* supra, at 857-58; *United States ex rel. Thomas v. Murphy,* 227 F. Supp. 742, 744 (N.D.N.Y. 1964) (dictum); see *Doughty v. Maxwell,* supra; *White v. Maryland,* supra; *Rice v. Olson,* 324 U.S. 786, 788, 65 S. Ct. 989, 991 (1945); cf. *Moore v. Michigan,* supra; *Carter v. Illinois,* 329 U.S. 173, 67 S. Ct. 216 (1946).

This "constitutional right, of course, does not justify forcing counsel upon an accused who wants none." *Moore v. Michigan,* supra, at 161, 78 S. Ct. at 195; *Carter v. Illinois,* supra. But a finding of waiver may not be made lightly. E.g., *Moore v. Michigan,* supra; *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 1023 (1938); *Commonwealth ex rel. McCray v. Rundle,* supra.

Indeed, in this case the Commonwealth alleged

waiver in its return to the petition for a writ,[8] and the court below believed that the right to counsel had been waived.[9] Where, as here, the conviction record does not affirmatively show the accused was offered counsel and declined counsel after appropriate inquiry by the court, the burden may not be placed upon the accused to show that he did not intelligently and understandingly waive counsel. That burden rests upon the Commonwealth. *Carnley v. Cochran,* 369 U.S. 506, 516-517, 82 S. Ct. 884, 890 (1962). As we understand the prevailing principles of waiver,[10] neither the Commonwealth's conclusory allegations nor its proof at the 1952 hearing measure up to its burden. Nor is the court's determination on this issue (adopting, in essence, the Commonwealth's allegations[11]) sufficient to meet the applicable standards.

The court below, in concluding that if petitioner had a right to counsel he had waived such right, mis-

---

[8] The Commonwealth alleged: "13. In the Gideon case, the Supreme Court of the United States implies that the right to counsel may be 'competently and intelligently waived'. The Supreme Court sites [sic] with approval Johnson v. Zerbst, 304 U.S. 458, (1938) . . . [quoting from *Johnson*]. The relator was either 19 or 22 years of age at the time sentence was imposed and very well experienced in criminal procedure as he had been involved in criminal difficulty from the age of 9. (The relator gives two different years for his year of birth, 1922 and 1925.) The relator having known what he was charged with and having been experienced in criminal procedures, never made any request for counsel at any time in the proceedings, and therefore, waived his right for counsel."

[9] See note 3, supra.

[10] "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 1023 (1938). The principles enunciated in *Johnson,* a federal conviction case, apply equally to state court proceedings. *Carnley v. Cochran,* 369 U.S. 506, 515, 82 S. Ct. 884, 890 (1962). See also *Commonwealth ex rel. McCray v. Rundle,* 415 Pa. 65, 202 A. 2d 303 (1964).

[11] *Compare* note 3, supra, *with* note 8, supra.

construed the nature of an intelligent waiver. For support, the court quotes from petitioner's testimony at the earlier habeas corpus hearing which reveals only that O'Lock knew that he had waived a jury trial by entering his pleas on the bills of indictment. The only other supporting statement, also made at that hearing, was that petitioner may have subconsciously known that he could have procured counsel.[12] In our view, this nebulous testimony is insufficient to support a finding that the accused in 1944 understood his constitutional right to either counsel of his own choosing or, if indigent, to court appointed counsel and knowing that right, understandingly and intelligently waived it. At the 1944 hearing, the absence of counsel was not discussed. O'Lock was not asked if he desired counsel and did not request counsel.

Contrary to the suggestion in the opinion below, failure to request counsel may not, in itself, be construed as a waiver. E.g., *Carnley v. Cochran,* supra, at 513, 82 S. Ct. at 889. Moreover, the implication from the opinion below, that by the mere entry of a plea of guilty petitioner waived counsel, is erroneous. E.g., *Rice v. Olson,* 324 U.S. 786, 788-89, 65 S. Ct. 989,

---

[12] At the 1952 hearing, the petitioner's counsel elicited this information on direct examination: "Q. Did you request counsel? A. No, sir. Q. Did you know you were entitled to counsel? A. No, sir. Q. You had been in court before? A. As a juvenile, yes. Q. Did you have counsel there? A. Once. Q. Did they give counsel for you or your family get counsel for you at that time? A. My family. Q. Your family did? A. That is right. Q. Then you knew you could have counsel if you asked for it, didn't you? A. I probably did. I didn't think about it at the time. Q. You didn't think about it? A. No, sir."

Such testimony cannot be said to be the foundation of a "knowing and intelligent waiver." We note that this ambiguous and uncertain testimony, given over a decade ago, was given eight years after the pleas were entered in 1944.

We note also that this case involved ten charges. See our discussion of the *McCray* standards.

990-91 (1945). Since the record of the pleas proceeding and the record as developed on the habeas corpus proceeding cannot support a finding of intelligent and understanding waiver, we must hold that there was none.[13]

We take this opportunity to re-emphasize what we noted in *Commonwealth ex rel. McCray v. Rundle,* supra, concerning some of the factors to be considered in determining whether the accused intelligently and understandingly waived his right to counsel. Our courts must be extremely cautious in finding waiver of a constitutional right so fundamental and so pervasive as the right to counsel. The nature and extent of the record inquiry required to establish that an accused refused the offer of counsel, or otherwise waived his constitutional right to the assistance of counsel, is dictated by the particular factual circumstances presented and the accused's awareness of his position before the court.

Depending upon the particular circumstances of the case, the record must show, among other things, that the accused knew the nature of the crime charged against him, was advised or was aware of his right to counsel, and, if indigent or otherwise unable to secure counsel, that he was advised or was aware of his right

---

[13] In reality, under the pre-*Gideon* standards prevailing at the time of this conviction, if the defendant was indigent counsel would likely have been assigned only if an ingredient of unfairness would have otherwise operated. Thus, even if the defendant had asked for counsel, it might well have been refused. It must be presumed that these standards, inadequate when tested against *Gideon,* would have been applied. Therefore, a defendant in 1944 may not have been considered to have any protected right to counsel. In such a situation, it is difficult, absent affirmative acquiescence, to now presume that the defendant knowingly waived any right when, in fact, under pre-*Gideon* standards he may have had no then protected right.

to have assigned counsel[14] but that the accused intelligently and understandingly rejected the services of counsel. However, where the accused enters a plea of guilty to a complicated offense,[15] or where he pleads not guilty and is faced with an involved criminal charge and the attending trial circumstances tend to make the whole proceeding complex or obscure to the unrepresented layman,[16] the nature and completeness of the examination discussed in *McCray*[17] is required.[18]

[14] So that the accused may fully understand his rights, it is desirable that he be informed that court assigned counsel will be made available to him without fee or charge. See Pa. R. Crim. P. 318A (adopted June 30, 1964).

[15] See, e.g., *Von Moltke v. Gillies*, 332 U.S. 708, 68 S. Ct. 316 (1948).

[16] See, e.g., *Commonwealth ex rel. McCray v. Rundle*, 415 Pa. 65, 202 A. 2d 303 (1964).

[17] " 'To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances . . . .' " 415 Pa. at 69-70, 202 A. 2d at 305, quoting *Von Moltke v. Gillies*, supra, note 15, at 724, 68 S. Ct. at 323.

[18] The responses of an accused before the bar of the court may not be construed as unfavorable to his interest in the absence of clear record language to support such a conclusion. In this respect, the cautionary observation of this Court in *Commonwealth ex rel. Barnosky v. Maroney*, 414 Pa. 161, 199 A. 2d 424 (1964), as to the desirability of having the record clearly establish the accused's knowledge and awareness of his position before the court, is equally applicable to the waiver of any constitutional privilege, including the right to counsel. "Before accepting and acting upon a plea of guilty, a court must be satisfied that the plea is voluntary and intelligently entered. It would be wise for the court to make particular inquiry as to defendant's knowledge of the nature of the charge, of his right to trial by jury, and of the general consequences of his plea. It is desirable to have such

The proper and efficient administration of criminal justice can be best achieved when the facts regarding waiver clearly appear in the record assembled during the conviction proceedings. It is expected that this will be the future practice.

When the Commonwealth charges a citizen with a transgression against its laws and musters its forces to establish the guilt of an accused, our courts must be zealous in assuring that the defendant is given every constitutional opportunity to meet the accusations lodged against him. Every judge understands the complexity of our criminal law. Every judge is aware that untutored laymen may well be unable to fully comprehend the effect of a plea of guilty. Every judge realizes that an accused, even one who has been before the courts before, often feels awed by the proceedings in which he is involved. Only counsel may adequately protect the interests of the criminal defendant. Such counsel, if desired, must be afforded. The constitution demands no less.[19]

---

matters made known to the defendant by the court even though he be represented by counsel. . . . Furthermore, *proper administration of criminal justice suggests that the relevant attending facts and circumstances appear of record.*" Id. at 165, 199 A. 2d at 426. (Emphasis supplied.)

[19] This Court, acting in concert with the Superior Court, has promulgated certain new Rules of Criminal Procedure (adopted June 30, 1964, effective January 1, 1965). These new rules are designed to forestall future difficulties of the type presently before us.

Pa. R. Crim. P. 116(b) is intended to provide the machinery by which an accused in a criminal case will become, at the earliest possible moment, fully instructed of his right to counsel. Under this rule, a magistrate (denominated an "issuing authority" by the new rules) must advise an accused of his right to counsel upon the first occasion when the accused is brought before him. The magistrate's docket must show that this has been done. Pa. R. Crim. P. 124(b) (11). When the accused is bound over to court, the transcript must affirmatively reveal the same information. Pa. R.

The order of the Superior Court is reversed. The order of the Court of Common Pleas of Dauphin County is reversed and the record is remanded to that court with directions to issue the writ and grant a new trial.

Crim. P. 125(a). Thus, both counsel for the Commonwealth and the trial court will be able to review the proceedings immediately upon a binding over and take whatever corrective action may be necessary if the rules have not been observed.

The machinery for obtaining court assigned counsel is provided by Pa. R. Crim. P. 318. Thus, an accused who is without financial resources or who is otherwise unable to employ counsel is guaranteed his constitutional right to counsel. As an additional precaution, Pa. R. Crim. P. 317(c) deals with the situation where an unrepresented defendant appears at his formal arraignment without counsel. The rule provides for the appointment of defense counsel by the court unless the right to counsel is intelligently and understandingly waived.