## Commonwealth ex rel. McKee, Appellant, *v.* Russell.

Submitted November 8, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, FLOOD, JACOBS, and HOFFMAN, JJ.

. *Gerald McKee,* appellant, in propria persona.

*Vincent J. Pepicelli,* District Attorney, for appellee.

Opinion Per Curiam, December 16, 1965:
Order affirmed.

---

Dissenting Opinion by Hoffman, J.:

This is an appeal from an order of the lower court dismissing appellant's petition for writ of habeas corpus after a hearing. The single legal question of importance in this case is whether appellant, when entering his guilty plea before the late Judge Mook, had understandingly and intelligently waived his right to counsel.

To sustain its burden of proving that appellant did intelligently and understandingly waive this right, the Commonwealth offered appellant's signed statement in which he pleaded guilty and waived the appointment of counsel. Such a signed statement alone could not establish that appellant effectively waived his right to counsel. *Commonwealth ex rel. Ross v. Botula,* 206 Pa. Superior Ct. 1, 211 A. 2d 42 (1965).

In addition, however, the Commonwealth offered the testimony of Judge Richard P. Thomas who was, at the time of the original proceedings, District Attorney of Crawford County. Judge Thomas testified as to the general practice of Judge Mook before allowing an accused to enter a guilty plea without counsel. He stated that Judge Mook would ask the defendant if he had counsel, and if he was aware that he had a right to counsel. If defendant's answer was in the negative, Judge Mook would tell the defendant that the court would appoint counsel for him. If defendant indicated that he knew that he had a right to counsel and waived that right, Judge Mook would explain to the defendant that he had a right to have the case submitted to

the Grand Jury, and, if a true bill were returned, to a jury trial.

Appellant's attorney objected to this testimony on the ground that it related only to general custom or practice, rather than to what actually happened at that time. I agree that this testimony could not adequately prove that appellant waived his right to counsel.

Our Supreme Court has made clear that to sustain its burden, the Commonwealth must prove not only that proper questions were generally asked. It must further show that the accused ". . . was advised or was aware of his right to have assigned counsel but that the accused intelligently and understandingly rejected the services of counsel." *Commonwealth ex rel. O'Lock v. Rundle,* 415 Pa. 515, 525-526, 204 A. 2d. 439, 444 (1964).

Similarly, in *Von Moltke v. Gillies,* 332 U. S. 708, 724, 68 S. Ct. 316, 323 (1948), the United States Supreme Court noted that ". . . a mere routine inquiry— the asking of several standard questions followed by the signing of a standard written waiver of counsel— may leave a judge entirely unaware of the facts essential to an informed decision that an accused has executed a valid waiver of his right to counsel."

The testimony of Judge THOMAS could establish, at best, that certain routine questions were ordinarily asked. It could not establish what actually occurred when appellant himself pleaded guilty. In the absence of evidence which bears directly on this case and which adequately demonstrates that this accused understandingly and intelligently waived his right to counsel, I cannot find that the Commonwealth has sustained its burden.

The dangers inherent in a contrary approach, and the actual weakness of the Commonwealth's position in this case, may best be demonstrated by referring to Judge THOMAS' answers on cross-examination:

"Q. Isn't it a fact that it's entirely possible that while the court might have suggested to Mr. McKee that he had a right to counsel, there could have been a failure in this case to explain to Mr. McKee that he had a right to counsel whether or not he had funds or money with which to pay an attorney . . . .

"A. Yes. That's true. He could not have added that. I have no clear recollection whether he did or did not. If the defendant said he didn't want counsel, the court took it for what he said.

"Q. Of course there's no record in this case that the Judge made any such statement, is that not a fact?

"A. I have no clear recollection of what the defendant said in this case in court."

"Our courts must be extremely cautious in finding waiver of a constitutional right so fundamental and so pervasive as the right to counsel." *Commonwealth ex rel. O'Lock v. Rundle*, supra, p. 525. To find that an accused has intelligently waived this fundamental right solely from testimony relating to a judge's general practice is to cast caution aside. Criminal justice, in this regard, can only be achieved when there is clear evidence proving what actually occurred at the conviction proceedings. I would hold, therefore, that testimony relative to the established custom and practice of a judge cannot adequately establish that an accused understandingly and intelligently waived his right to counsel.

The Commonwealth also contends that appellant had the opportunity to consult with private counsel while in jail. Appellant admitted that an attorney did review his case. He testified, however, that the attorney did not inform him of his rights and told him that nothing further could be done.

We cannot know what happened at this meeting. It is clear to me, however, that neither the courts nor the Commonwealth should rely on prior private conversa-

174

tions between attorney and accused to prove that a defendant understandingly waived his right to counsel. The accused should have his rights fully explained to him in open court. Indeed, our Supreme Court has indicated that in waiving any constitutional privilege, "It is desirable to have such matters made known to the defendant by the court *even though he be represented by counsel . . .*" (emphasis added). See *Commonwealth ex rel. O'Lock v. Rundle*, supra, p. 526 n. 18, quoting *Commonwealth ex rel. Barnosky v. Maroney*, 414 Pa. 161, 165, 199 A. 2d 424, 426 (1964).

I conclude, therefore, that the Commonwealth failed to prove that appellant was offered counsel but intelligently and understandingly rejected that offer. Consequently, I would reverse the order of the lower court and remand the record with directions to issue the writ and grant a new trial.

JACOBS, J., joins in this dissenting opinion.