**UNITED STATES of America ex rel. Joseph Frank MAZEWSKI, Appellant,**

v.

**David N. MYERS, Superintendent, State Correctional Institution, Graterford, Pennsylvania, Appellee.**

**No. 15152.**

United States Court of Appeals Third Circuit.

Argued Sept. 20, 1965.

Decided Oct. 27, 1965.

Rehearing Denied May 3, 1966.

Freedman, Circuit Judge, dissented.

Martin Greitzer, Philadelphia, Pa., for appellant.

Richard A. Devlin, Norristown, Pa. (Richard S. Lowe, Dist. Atty., Norristown, Pa., on the brief), for appellee.

Before McLAUGHLIN, HASTIE and FREEDMAN, Circuit Judges.

PER CURIAM.

This appeal from denial of an application for writ of habeas corpus emanates from a Commonwealth of Pennsylvania court conviction of appellant for burglary, larceny and receiving stolen goods.

The points on appeal are that the district court erred in finding that appellant had waived his right to counsel at trial and that he was denied right to counsel at his sentencing. These matters have been thoroughly and competently presented by counsel for appellant. From review of the record the facts as justifiably found by the district court make it very clear that appellant intelligently, competently and voluntarily waived his right to counsel at his trial and that his said waiver carried over through his sentencing which latter immediately followed his conviction. The trial transcript fully substantiates this. It reads as follows:

"Therefore, I find the defendant guilty of burglary and larceny.

"All right. Now, what about sentence?

"Mr. Mazewski, do you want to tell me anything more before I sentence you?

"The Defendant: No, I don't have anything else to say, your Honor."

After the above, appellant's previous criminal record was presented to the court who had it shown to appellant first. The latter stated it referred to him. The court asked him "Is there anything on here that is not correct?" Defendant answered "No, everything is correct." The record revealed that since September 26, 1938 appellant had been confined most of the time for various offenses, primarily burglary and larceny, down to 1959 at which time he was sentenced by the state court for burglary and conspiracy to serve five to fifteen months in the county prison. The court, commenting that appellant had been incarcerated "for some twenty-five years now" then said:

"Stand up, Mr. Mazewski. Mr. Taylor, on behalf of the Commonwealth, says by reason of your previous criminal record, and you have been in jail a good many years, haven't you, off and on?

"The Defendant: Yes, I have. I would say so, your Honor.

"The Court: He suggests that I sentence you to the maximum, which would be ten to twenty years in the Eastern State Penitentiary. Now, what do you say in answer to him?

"The Defendant: I can't say nothing. What could I say? There is nothing I could say."

The order of the district court denying appellant's petition for writ of habeas corpus will be affirmed.

FREEDMAN, Circuit Judge, dissents.

ON PETITION FOR REHEARING

Before KALODNER, Chief Judge, and McLAUGHLIN, STALEY, HASTIE, GANEY, SMITH and FREEDMAN, Circuit Judges.

PER CURIAM.

A majority of the Court being of the opinion that the petition for rehearing is without merit, the petition will be denied.

McLAUGHLIN, Circuit Judge (concurring).

The first eleven typewritten pages of the dissent consist partly of the refusal to believe the trial transcript which shows beyond all doubt that appellant categorically, intelligently and understandingly waived trial counsel. The balance of that section of the dissent is made up of speculation that appellant had some motivation, of which there is no evidential record or inference, for such waiver. No question whatsoever is raised in the petition for rehearing as to the validity of the waiver of counsel at trial. We note that it is the denial of rehearing that is used as the reason for the current dissent. In any event after eleven typewritten pages concerning the first question the point is expressly abandoned with respect to this appeal. The alleged excuse put forth for this is that the next point "seems to me decisive." That next point starts off by saying, "It is clear, as the majority apparently concedes, that the trial on the plea of not guilty and the sentencing were separate critical proceedings, that petitioner was just as entitled to counsel at sentencing as he was at trial, and that prejudice need not be shown to obtain redress for its denial." That statement is entirely mistaken in the context of this appeal. The majority opinion, though a per curiam, stated the exact record fact. We said:

"From review of the record the facts as justifiably found by the district court make it very clear that appellant intelligently, competently and voluntarily waived his right to counsel at his trial and that his said waiver carried over through his sentencing which latter immediately followed his conviction. The trial transcript fully substantiates this. It reads as follows:

'Therefore, I find the defendant guilty of burglary and larceny. ·

'All right. Now, what about sentence?

'Mr. Mazewski, do you want to tell me anything more before I sentence you?

'The Defendant: No, I don't have anything else to say, your Honor.'

"After the above, appellant's previous criminal record was presented to the court who had it shown to appellant first. The latter stated it referred to him. The court asked him 'Is there anything on here that is not correct?' Defendant answered 'No, everything is correct.' The record revealed that since September 26, 1938 appellant had been confined most of the time for various offenses, primarily burglary and larceny, down to 1959 at which time he was sentenced by the state court for burglary and conspiracy to serve five to fifteen months in the county prison. The court, commenting that appellant had been incarcerated 'for some twenty-five years now' then said:

'Stand up, Mr. Mazewski. Mr. Taylor, on behalf of the Commonwealth, says by reason of your previous criminal record, and you have been in jail a good many years, haven't you, off and on?

'The Defendant: Yes, I have. I would say so, your Honor.

'The Court: He suggests that I sentence you to the maximum, which would be ten to twenty years in the Eastern State Penitentiary. Now, what do you say in answer to him?

'The Defendant: I can't say nothing. What could I say? There is nothing I could say.' "

Appellant was never denied legal representation. He had by the record at least four privately hired attorneys at one time or other in the state criminal proceedings. The trial date at the request of his attorneys was postponed several times. Finally, on June 19, 1963, the then set date, Mr. Baum, the attorney who was to represent appellant at his trial, had not received his agreed retainer and the Court was so advised by another of appellant's lawyers, Mr. Reynolds. The latter offered to appear as defendant's trial counsel. The defendant declined the offer and asked the trial judge

to hear the case without a jury, stating that he wanted to proceed without counsel. As is seen even from the short trial excerpt above quoted the defendant was no tyro with respect to criminal matters directly affecting him. The trial did not start until June 21st. In the interval, as borne out by the record, Mazewski did not get in touch with Mr. Baum, Mr. Reynolds or any other lawyer. There was no element of lack of funds in this connection. Mazewski as late as the habeas corpus hearing had $1200 worth of bonds held by the Warden for him. He also had testified at one of the trial postponements that he had $600 plus cash in his pocket. From the beginning, the state court judge was strongly advising Mazewski of his right to counsel. Back in April of 1963 when Mr. Jarvis, his attorney at the time, was withdrawing, the trial judge told Mazewski " * * * we can appoint the Defenders for you right now." Mazewski answered "Well I want to get my own attorney." The next day the judge put the trial over to that June. He told Mazewski that, subject to illness or other important happening, the trial would go on at that time. He said to Mazewski, "Do I make myself clear?" The defendant answered "Yes, Sir." The Court said, "So you better stick with the counsel you have." On June 19, 1963, two days before the trial, the Court told Mazewski:

> "Well, the Supreme Court of the United States says that in any serious case you [sic] must afford counsel to you, if you want counsel."

Mazewski answered, "I don't want none, Your Honor."

On June 21, 1963 after Mazewski, in accordance with his insistence on a non jury trial, had executed the formal waiver in that regard the Court stated:

> "Mr. Mazewski at the Bar of the Court, voluntarily stated his willingness to waive a jury and is fully advised of his legal rights, aware of his legal rights, and has consented to have this case proceed to trial without his having the benefit of counsel during the course of the trial. Is that correct, Mr. Mazewski?"

The defendant answered "Yes."

The trial followed. At its conclusion Mazewski was found guilty of burglary and larceny. The judge next, in direct sequence as is above set out, took up the problem of sentencing. He said "Mr. Mazewski, do you want to tell me anything more before I sentence?" Mazewski's answer was as we have noted. The judge talked to Mazewski about his long criminal record which defendant admitted. He advised him of the sentence suggested by the District Attorney and asked "Now, what do you say in answer to him?" Mazewski replied "I can't say nothing. What could I say? There is nothing I could say."

The above complete record history of the meticulously full, fair dealing by the Commonwealth Court with Mazewski in regard to an attorney appearing for him throughout this criminal trial including the sentencing cannot be honestly misinterpreted. The attorneys the Court wished to appoint for Mazewski would have so appeared. Any private attorney would have so appeared. Mazewski wanted none of them to represent him. That representation would have included the sentencing element. It is a warranted inference that Mazewski knew this well. It is a compelled conclusion from the facts which cannot be distorted that Mazewski was strongly urged to accept counsel from the Court for the entire trial court proceedings of which the sentencing, if it came to that, was an integral part. Actually, after the conviction, the dialogue at that time between the Court and Mazewski reveals still ample opportunity for Mazewski to change his mind if he had so wished and request an attorney then and there. He never changed his position. As he stated with reference to the trial facts and his conceded criminal record there was nothing that even he could say in mitigation.

It is well to make it thoroughly understood that the widest stretch of imagination cannot turn the decision before us into one which violates the principles of Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948) or

Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961) or Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) or any proper holding in the general field relevant to the conclusive facts of this appeal. The state judge who tried the criminal case from which these proceedings arise completely accepted and conscientiously functioned under the great principles of the above mentioned opinions and their like.

There is no merit to the petition for rehearing. I concur in its denial by this Court.

FREEDMAN, Circuit Judge (dissenting).

I dissented without opinion from the per curiam affirmance of the denial of appellant's petition for a writ of habeas corpus. Since the Court en banc now denies appellant's petition for rehearing, which I vote to grant, it is appropriate that I express the reasons for my dissent.

The panel in its per curiam opinion concluded that the facts appearing in the record "make it very clear" that petitioner intelligently and voluntarily waived his right to counsel at his trial and that this waiver "carried over through his sentencing which latter immediately followed his conviction". I have serious doubts that the record shows an adequate waiver of counsel at the trial but in any event it is indubitable that there was no consideration or waiver of the right to counsel at sentencing. Indeed the record casts serious doubt on the voluntariness of the waiver of jury trial which preceded the trial.

This record to me reveals the evils which surround the dispatch of criminal business in great urban areas despite the desire of the courts to afford full protection to the rights of accused. For although the trial judge here conscientiously sought to protect petitioner's rights, I believe that to deny the writ in the circumstances of this case is to reduce important constitutional rights from living, vibrant protections to threadbare formulas which have no relation to the realities of human affairs.

A full statement of the circumstances, taken from the state transcript and the findings of the district judge, is essential to an understanding of the issues raised. Petitioner was arrested and later indicted on charges of burglary, larceny and receiving stolen goods. After his arrest he retained a lawyer who arranged for his bail, on which he was released in a few weeks. Trial of the case was fixed for the week of April 15, 1963. On the eve of trial petitioner dismissed his lawyer and on April 16th engaged Kingsley A. Jarvis, Esquire, to try his case. He paid him a retainer of $100, to be credited against a total fee of $500. Mr. Jarvis on that day obtained a continuance until April 22nd to enable him to prepare the case for trial. On April 22nd Mr. Jarvis asked leave of the Court to withdraw as petitioner's counsel. A colloquy ensued in which the Assistant District Attorney opposed a continuance, claiming that petitioner was using this as a means to delay the trial; he urged that petitioner "should be forced to trial". The Court suggested that the case be passed until next day, to which the Assistant District Attorney agreed, and petitioner indicated that he could perhaps obtain a new attorney. The Court suggested that petitioner could obtain his own attorney or the Court would then and there appoint the Defenders to represent him, but petitioner replied that he wished to obtain his own attorney. It was then agreed that the case would be called the following morning and Mr. Jarvis, with the agreement of petitioner, was permitted to withdraw as counsel.

Next morning a new lawyer, Roger B. Reynolds, Esquire, appeared, stating that a Philadelphia lawyer, E. Harris Baum, Esquire, had been retained on the previous day by petitioner. Mr. Baum was engaged in the trial of a case in Philadelphia and had asked Mr. Reynolds, his Montgomery County associate, to speak to petitioner. Mr. Reynolds told Mr. Baum that he had reached the petitioner late in the afternoon and would not be

able to try the case in the morning because there would not be adequate time to prepare it. Mr. Baum suggested that he himself would represent petitioner on payment of a retainer but since he was not in a position to try it in the morning, asked Mr. Reynolds to seek a continuance. The Court asked assurance from petitioner that there would be no repetition of change of counsel if the case should be postponed and this assurance petitioner gave, saying: "No, it won't your Honor. This man that I—I just got this fellow. I know he will represent me properly." A note of difficulty was struck, however, by Mr. Reynolds, who then told the court that there appeared to him to be a deterrent to the employment of new counsel in the substantial amount of the fee which Mr. Baum was asking. Mr. Reynolds wisely suggested that retrial be avoided and although his comment was broken off it is evident that he believed a continuance should be granted to avoid a later charge that petitioner was tried without adequate opportunity to have the effective assistance of counsel. The Assistant District Attorney then stated that his view was the same as it had previously been, i. e., he opposed a continuance. Thereupon the Court suggested a waiver of jury trial so that the case could be heard at some "time in between". Mr. Reynolds responded that he could not advise petitioner because he was only associated with Mr. Baum, but he did go on to say that it was possible that when the entire case was studied there might not even be a trial,—the implication being that petitioner might be advised to plead guilty. The judge, although noting the delay and changes of counsel that had occurred, emphasized his desire not to prejudice petitioner and postponed the case to June, declaring that it would be tried at that time and specifically advising petitioner to make no further change of counsel.

On June 19th, when the case was called, defendant pleaded not guilty. At that time Mr. Reynolds asked leave to withdraw from the case; he had appeared only out of courtesy to the Court since he was merely associated with Philadelphia counsel and therefore did not himself directly represent petitioner. In the colloquy that ensued it appears that Mr. Baum had not received his additional fee and therefore would not appear. Defendant himself had been delivered into custody about 10 days before by his bondsman. In view of the absence of Mr. Baum, Mr. Reynolds advised the Court that he would represent petitioner if petitioner wished him to do so, since he had made the request which occasioned the continuance. The Court then addressed petitioner, and the record shows the following colloquy:

"The Court: The last term, if I remember correctly, you hired and fired two lawyers, and you came in at that time without a lawyer.

"The Defendant: Yes, sir.

"Mr. Taylor [Assistant District Attorney]: That is right.

"The Defendant: I want to get tried.

"The Court: You want to get tried, well, that is what we are here for.

"The Defendant: The way I was figuring to do was waive everything and leave everything to you. That is what I wanted.

"The Court: You want to waive a jury trial?

"The Defendant: Waive the jury and everything.

"The Court: Well, the Supreme Court of the United States says that in any serious case you must afford counsel to you, if you want counsel.

"The Defendant: I don't want none, your Honor.

"The Court: You don't want any? Is there any question in your mind as to what this is all about and you are ready to present your defense?

"The Defendant: Well, I am not going to be my own lawyer. I will just leave everything to your Honor, the Judge. I am not representing myself.

"The Court: Well, he is in jail. Do you agree to a waived jury trial?

"Mr. Taylor: I would agree, your Honor.

"The Court: What?

"Mr. Taylor: I would agree, your Honor.

"The Court: All right. * * * "

Mr. Reynolds was then permitted to withdraw after petitioner stated that he had no objection. The case was tried later that week and at its commencement the Court noted for the record the stipulation waiving jury trial. The following then occurred regarding counsel:

"Mr. Taylor: I think we should have him reaffirm this waiver of counsel and—

"The Court: Yes, Mr. Mazewski, at the Bar of the Court, voluntarily stated his willingness to waive a jury trial and is fully advised of his legal rights, aware of his legal rights, and has consented to have this case proceed to trial without his having the benefit of counsel during the course of the trial. Is that correct, Mr. Mazewski?

"The Defendant: Yes.

"The Court: All right. Stand up a minute, will you?

"Do you have any question at all before we proceed?

"The Defendant: No, sir, your Honor. No questions."

At the conclusion of the trial the Court adjudged the defendant guilty of burglary and larceny:

"The Court: Therefore, I find the defendant guilty of burglary and larceny.

"All right. Now, what about sentence?

"Mr. Mazewski, do you want to tell me anything more before I sentence you?

"The Defendant: No, I don't have anything else to say, your Honor."

A colloquy ensued regarding the defendant's previous criminal record, which the defendant acknowledged was correct. As the per curiam opinion shows, the Court commented that petitioner had been incarcerated for about 25 years for prior crimes and then said:

"Stand up, Mr. Mazewski. Mr. Taylor, on behalf of the Commonwealth, says by reason of your previous criminal record, and you have been in jail a good many years, haven't you, off and on?

"The Defendant: Yes, I have. I would say so, your Honor.

"The Court: He suggests that I sentence you to the maximum, which would be ten to twenty years in the Eastern State Penitentiary. Now, what do you say in answer to him?

"The Defendant: I can't say nothing. What could I say? There is nothing I could say."

The formal transcript of a judicial proceeding reflects in a cold light the human emotions which surround the recorded words. Reading them literally, however, along with the facts developed at the hearing before the district judge, I find it difficult to believe that petitioner voluntarily and intelligently waived the right to counsel at his trial. The circumstances at once raise obvious questions. Why would petitioner so eagerly waive his right to counsel when he had already paid out money to retain counsel? True, he had dismissed his lawyers one after the other, but each time he retained someone else. It is difficult for me to believe that petitioner made a voluntary choice before the trial began to surrender his right to the professional assistance of a legal advisor. On the contrary, it seems to me that if he cast it away it was because he thought it was the necessary price to avoid appearing insubordinate to the judge before whom he was to be tried. Defendant had a long criminal record and was a man with little education—he had gone as far as the fifth grade. His efforts to escape trial by last minute changes of counsel brought on discussions between the court and his counsel which reflected prejudicially on his honesty of purpose. His bail had been revoked by his bondsman, and he was brought to court where he faced a judge who had announced that he would refuse any fur-

ther continuance, the local associate of his lawyer, who had already discussed with the Court his withdrawal from the case, and a prosecutor eager for trial. It was in these circumstances that petitioner made a complete about-face and announced that he did not desire a lawyer and would not act on his own behalf, but threw himself entirely in the hands of the judge, who was not and could not act as his lawyer. In his words, he would "just leave everything to your Honor, the Judge".[1]

These circumstances for me cast grave doubt on the finding that petitioner's waiver of counsel was voluntary. But a waiver must be more than a voluntary one. It must also be made intelligently and understandingly, and the burden of showing this rests upon the prosecution. Carnley v. Cochran, 369 U.S. 506, 516–517, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); Commonwealth ex rel. O'Lock v. Rundle, 415 Pa. 515, 523, 204 A.2d 439 (1964). A gulf divides the information given to petitioner on his right to counsel at his trial and the requirements laid down by the Supreme Court. For all that the state trial transcript shows petitioner knew nothing whatever of the nature and details of the serious charges against him, the legal ingredients of the crimes, the factual issues which they raised and the legal problems of evidence by which the facts might be proven. It is plain that he went to trial as if the simple knowledge that he was charged with burglary, larceny and receiving stolen goods made the ingredients of these crimes self-explanatory and as if the means of their proof and the defenses to them were self-evident. But surely at this late date it is clear that this is not enough to justify acceptance of a waiver of counsel. Mr. Justice Black has vividly described the purpose and scope of the requisite inquiry in Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948): "The fact that an accused may tell [the judge] * * * that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

" * * * [A] mere routine inquiry— the asking of several standard questions followed by the signing of a standard written waiver of counsel—may leave a judge entirely unaware of the facts essential to an informed decision that an accused has executed a valid waiver of his right to counsel." See similarly, Commonwealth ex rel. O'Lock v. Rundle, 415 Pa. 515, 525–527, 204 A.2d 439 (1964).

We very recently had occasion to apply this principle in United States ex rel. McDonald v. Commonwealth of Pennsylvania, 343 F.2d 447 (3 Cir. 1965), where the defendant said he did not want a lawyer, and when the court inquired whether he understood the nature of the charges against him, replied that he did and repeated that he did not wish to have a lawyer. We held that the record did not show that the waiver of counsel was made with full understanding and comprehension of the defendant's constitutional rights and remanded for a full and plenary inquiry. Here the District Court has performed this function, and has based its finding that the waiver was in-

1. There is a reminiscent echo of the ill-fated Betts v. Brady, 316 U.S. 455, 472, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), where it was said that the usual practice in Maryland was for a defendant to waive a jury trial so that the trial might be conducted more informally and the judge was in a better position to see to it that a defendant without counsel obtained a fair trial.

telligent and knowing on petitioner's experience with the law. For myself I believe the judge should develop at the time of waiver the circumstances which would show a defendant's knowledge and understanding and not leave them to be supplied in post-trial proceedings. See Commonwealth ex rel. O'Lock v. Rundle, 415 Pa. 515, 525–527, 204 A.2d 439 (1964); Heiden v. United States, 353 F.2d 53 (9 Cir. 1965).

I believe, therefore, that the record does not show an intelligent and voluntary waiver by petitioner of the right to counsel at his trial, a constitutional right so fundamental that acquiescence in its loss is not to be lightly inferred. See Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Commonwealth ex rel. O'Lock v. Rundle, 415 Pa. at 525, 204 A.2d 439. For present purposes, however, I put this question aside, for a separate matter seems to me decisive.

It is clear, as the majority apparently concedes, that the trial on the plea of not guilty and the sentencing were separate critical proceedings, that petitioner was just as entitled to counsel at sentencing as he was at trial, and that prejudice need not be shown to obtain redress for its denial.[2] Indeed, the sentence was for petitioner a matter of the utmost gravity for the Court imposed the maximum term of imprisonment authorized by the Penal Code.[3]

Yet when we turn from the trial which adjudicated the petitioner's guilt, to the sentence which determined the degree and extent of his punishment, we find a record which is completely bare of any evidence of waiver. The record contains not a word to show that the defendant had any knowledge of a separate right to counsel once he was found guilty. There was only the judge's question whether petitioner himself wished to say anything more before sentence was pronounced, an inquiry which implicitly gave notice that he had no right to counsel at the sentencing. And earlier, before the trial on the merits began and what has been held to be a waiver was made, the record shows plainly that what was contemplated was the waiver of counsel at the *trial.* Thus the Court in formally entering on the record the waiver, said: "Yes, Mr. Mazewski * * * is fully advised of his legal rights, aware of his legal rights, and has consented to have this case proceed *to trial* without his having the benefit of counsel during the *course of the trial.* Is that correct, Mr. Mazewski?

"The Defendant: Yes."

Petitioner was not told at any other time that the right to counsel extended to any proceeding other than his trial. This marks the limit, therefore, of any waiver he may have made even if it had been intelligent and voluntary. For it is impossible to conclude that he intended to waive a right which so far as the record shows he was unaware he had. Indeed it is obvious that the right to counsel at the sentencing proceeding was not brought home to petitioner simply because the trial judge did not recognize the existence of the question. Petitioner

2. See Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), establishing that sentencing is a critical proceeding at which the right to counsel attaches; Hamilton v. State of Alabama, 368 U.S. 52, 55, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), holding that showing of prejudice is unnecessary; and Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), holding the right to counsel applicable to all serious state proceedings. See also Palumbo v. State of New Jersey, 334 F.2d 524, 529–530 (3 Cir. 1964); Wright v. Dickson, 336 F. 2d 878, 882 (9 Cir. 1964); Nunley v. United States, 283 F.2d 651 (10 Cir. 1960); Willis v. Hunter, 166 F.2d 721 (10 Cir. 1948), cert. denied, 334 U.S. 848, 68 S.Ct. 1499, 92 L.Ed. 1772 (1948); Thomas v. Hunter, 153 F.2d 834 (10 Cir. 1946); Kent v. Sanford, 121 F.2d 216 (5 Cir. 1941); Commonwealth ex rel. Johnson v. Maroney, 416 Pa. 451, 206 A.2d 322 (1965); Commonwealth ex rel. Remeriez v. Maroney, 415 Pa. 534, 204 A.2d 450 (1964).

3. The Penal Code of June 24, 1939, P.L. 872, § 901, 18 Purdon's Pa.Stat.Annot. § 4901.

surely cannot be said to have intended to waive a right which no one at the trial thought existed.

The district judge on this state of the record made no finding of any waiver of the right to counsel at sentencing, nor did he hold that the waiver at trial carried over in fact or in law to the sentencing. The absence of such a finding is in my view fatal to any conclusion that petitioner intentionally waived the right to counsel at his sentencing.

Finally, the ultimate premise of the Court's conclusion appears to be that petitioner's waiver of counsel at his trial carried over automatically to the sentencing proceeding.[4] The majority applies such a rule even though there is admittedly no evidence of knowledge of the right to counsel at sentencing or of intention to waive such right. It also appears to be conceded that a waiver of the right to counsel at trial still leaves a defendant entitled to counsel at sentencing, if he requests it. I believe that in these circumstances it is constitutionally not permissible under the due process clause to carry over automatically to the separate criminal proceeding on sentence a waiver of the right to counsel made at a trial on the merits. To do so is irreconcilable with the settled doctrine that waiver must be intelligently and knowingly made, or as formulated in Johnson v. Zerbst, 304 U.S. at 464, 58 S.Ct. at 1023, must be "an intentional relinquishment or abandonment of a known right or privilege". It runs counter to the policy reflected in Chessman v. Teets, 354 U.S. 156, 162–163, 77 S.Ct. 1127, 1 L.Ed.2d 1253 (1957),

where a broad waiver of counsel at trial was held not to extend to post-trial proceedings to settle the transcript.[5] The modern rule imposes on the judge the duty to advise a defendant of his right to counsel and to accept his waiver only where the judge penetrates by direct inquiry into the mind of the defendant and is satisfied that he is fully aware of the circumstances and yet willingly and therefore knowingly wishes to surrender his right to counsel. See Von Moltke v. Gillies, supra. Even before Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942) was overruled by Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Supreme Court said in Carnley v. Cochran, supra: "The record does not show that the trial judge offered and the petitioner declined counsel. * * * But it is settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request. * * * (369 U.S. p. 513, 82 S.Ct. p. 888). Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." (p. 516, 82 S.Ct. p. 890).

Believing as I do that petitioner's fundamental rights were violated and having dissented for the foregoing reasons from the opinion of the panel affirming the denial of the petition for a writ of habeas corpus, I now dissent for the same reasons from the denial of the petition for rehearing.

4. Such a principle, followed in Davis v. United States, 226 F.2d 834, 840 (8 Cir. 1955), cert. denied, 351 U.S. 912, 76 S.Ct. 702, 100 L.Ed. 1446 (1956), and Panagos v. United States, 324 F.2d 764 (10 Cir. 1963), was noted without express adoption in United States v. Washington, 341 F.2d 277, 286 (3 Cir. 1965). It was rejected in Williams v. State of Alabama, 341 F.2d 777, 781 (5 Cir. 1965).

5. See also Davis v. Holman, 354 F.2d 773 (5 Cir. 1965), where a knowing and voluntary waiver of counsel on arraignment and trial was held not to carry over to the separate, critical stage of defendant's change of his plea from not guilty to guilty, and the State was required to prove a fresh act of waiver of the right at that time.