Commonwealth *v.* Brown, Appellant.

Submitted March 19, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Charles Jay Bogdanoff,* for appellant.

*Roger F. Cox* and *James D. Crawford,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., June 13, 1969:

This is an appeal from a conviction for sale and possession of narcotics stemming from a trial con-

ducted as part of the "Minor Case or Crash Court program" in Philadelphia.

Under that program, as stated by the District Attorney at appellant's post-conviction hearing, the Trial Commissioner informs prisoners gathered in the Philadelphia prison gymnasium, up to one hundred prisoners at a time, that there are three classifications of trial in Philadelphia; "Major Court, Regular Court and Crash program or Minor Court." He also tells them that if they are in the Minor court program there will not be any witnesses against them and that "the police report will be read." Moreover, it is stated, "If you want to have the witnesses then you cannot be in Minor court."

If a prisoner elects to be tried under the Minor court or Crash court program, he is brought to trial at an early date. Prior to trial, in the courtroom, another speech is made to the defendants appearing under the minor case program. They are again informed that "they (are) about to be tried before a Judge on the reading of a police report, and . . . that if their case was presented in such a way to the particular Judge who was trying those cases, that they stood to gain a more lenient sentence than they would in a full trial; and also that . . . if they desired to confront the witnesses against them, that they should tell him and that they would not be tried in that program." After being so informed the defendant is brought to trial. Appellant elected to be tried under the Crash program.

At his trial, the District Attorney proceeded to read a police report which stated that appellant had sold drugs to the police officer who swore out the complaint in the presence of a third party named "Soldier," an alleged police informer. Appellant was arrested four months after this alleged incident when the police officer identified his picture from "mug shots."

Appellant took the stand and stated: "Your Honor, (the police officer) had the wrong man. He looked in the mug file and he seen my picture in there, he said it looks just like the man. Now, this happened five months— Q. . . . Who is Soldier? A. Your Honor, I don't know any Soldier. Q. You would know him if Soldier came here? A. I don't know who Soldier is. The Court: The law doesn't require the production of the informer or intermediary, whatever you call him. You can always go to the jury on that question. He is not here, however, the police officer would identify him. . . . Q. Do you have anything more to say? A. Your Honor, I say you have the wrong man. By The Court: Q. Mr. Brown, you can help yourself by giving us all the truth. A. I am telling the truth, Your Honor. He said I looked like the man. He got the wrong man. The Court: All right, I will find him guilty."

Appellant now maintains that when a defendant raises the defense of mistaken identity he should not be tried under the Crash court program. Specifically, he states that notwithstanding his prior agreement to be tried under this program, the trial judge should have reassigned the case to the regular court program for a conventional trial at which appellant would have had the opportunity to cross-examine prosecution witnesses.

The Commonwealth argues, however, that appellant's agreement to be tried under the Crash program constituted an irrevocable waiver of his right to cross-examine and confront his accusers, once the Crash trial has begun. We do not agree.

In determining whether a waiver of these constitutional rights has been knowingly and intelligently made, we must apply the familiar principle that a waiver will not be lightly inferred. Rather, "courts should indulge every reasonable presumption against waiver of

fundamental constitutional rights and not presume acquiescence in their loss." *Commonwealth ex rel. McCray v. Rundle,* 415 Pa. 65, 69, 202 A. 2d 303 (1964). Also see *Commonwealth ex rel. O'Lock v. Rundle,* 415 Pa. 515, 204 A. 2d 439 (1964) at 522, and *Commonwealth ex rel. McKee v. Russell,* 429 Pa. 402, 240 A. 2d 559 (1968).

The fact that appellant sought to attack the identification testimony cited in the police report indicates that he was not aware of the contents of that report prior to having it read at his Crash trial. He cannot be said, therefore, to have waived his right to cross-examine and confront the witnesses whose statements were not known to him. This is especially true as it is apparent that appellant never realized prior to trial that his right to confront witnesses at trial would assume such importance.

The Crash court, which dispenses with a defendant's right to a complete trial is, in that respect, similar to the use of a guilty plea. When pleading guilty, the accused gives up his complete right of trial in hopes that he will receive a lighter sentence. If, however, he is disappointed in that respect, no binding waiver of his right to trial is inferred. Rather, the accused is able to withdraw the plea even after it has been tendered to the court. As was stated in *Commonwealth v. Evans,* 434 Pa. 52, 252 A. 2d 689 (1969), if a trial judge decides his original agreement as to sentencing was inappropriate he shall "permit a withdrawal of the (guilty) pleas."

Similarly, in the instant case, the dispensing with the defendant's constitutional trial rights should be treated with the utmost concern. If at any time during the proceedings, prior to the verdict, he indicates that he seeks to assert a constitutional right, he should be able to do so. No policy reason has been advanced to support binding him to his pre-trial agreement aside

from the notion of irrevocable contract which hardly comports with our constitutional concern for due process.

Crash court is an expedient tool designed for the mutual benefit of the defendant, the Commonwealth and the Courts. If all parties amicably utilize it, it may be considered a desirable tool. But, implicit in the Crash court's use is the elimination of fundamental constitutional rights. Thus, when any withdrawal from the Crash court program is necessitated by an asserted defense of a defendant, prior to trial, the Crash court becomes inappropriate and its use for that individual should be discarded. Otherwise, it may become a vehicle for Star Chamber proceedings against defendants who have been led to believe that the judicial system would provide procedural safeguards where such safeguards become necessary.[1]

Judgment of sentence is vacated and a new trial is ordered.

---

[1] The writer of this opinion, while a member of the County Court of Philadelphia, was instrumental in the establishment of the Crash court program some ten years ago. At that time it was understood that the program would never be employed in those cases where there is disputed testimony and a proper resolution can only be achieved through confrontation and cross-examination of witnesses.