Commonwealth ex rel. Barnosky, Appellant, *v.* Maroney.

162

Submitted March 25, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Steve Paul Barnosky*, appellant, in propria persona.

*Ferdinand F. Bionaz*, District Attorney, for appellee.

OPINION BY MR. JUSTICE ROBERTS, April 21, 1964:

On January 21, 1959, Steve Ralph Barnosky, then eighteen, was shot and killed by his father, Steve Paul Barnosky, appellant. On March 2, 1959, appellant was indicted for his son's murder, and two members of the Cambria County Bar were appointed by the court to represent him. Appellant was arraigned on June 8, 1959, before the court en banc. He was then represented by both counsel. Asked by the court how he desired to plead to the indictment, he replied, "Guilty." Appellant then signed his plea on the face of the indictment and was remanded to custody pending a hearing to determine the degree of guilt.

Extensive testimony was taken before the same court en banc on August 11 and 12, 1959. On August 19, 1959, appellant was adjudged guilty of murder in the first degree. Prior to the imposition of sentence on August 24, counsel for appellant read to him the court's written opinion which stated the reasons for the court's arriving at the maximum degree of guilt. Before sentence was pronounced, the following colloquy took place between the court and the defendant:

"BY THE COURT, GRIFFITH, J.: The defendant's attention is called to the fact that this court, on the 19th of August, 1959, after having taken testimony prior to that time, did adjudicate the defendant guilty of murder in the first degree and he is now here for the purpose of having sentence imposed upon him. Mr. Barnosky, have you anything to say at this time as to why sentence should not be now pronounced upon you? BY THE DEFENDANT: Yes, I have. BY THE COURT, GRIFFITH, J.: Very well. BY THE DEFENDANT, STEVE PAUL BARNOSKY: I'm sorry that I brought this grief upon my family and my relations and it will be with me all my life. That's all." The court sentenced appellant to life imprisonment. No appeal was taken.

We have carefully reviewed the testimony taken by the trial court, but our disposition of this case does not call for a detailed review of the facts. It is sufficient to note generally that decedent, on occasion, had abused his father, and appellant had previously threatened to take his son's life. On January 21, 1959, an argument and scuffle occurred in the family home, but no blows were struck. Appellant had been drinking, and, in a fit of anger, he went to his room, picked up his rifle, returned downstairs, and fired at his son, who was outside on the porch. The boy sustained a wound of the thorax and abdomen which resulted in massive hemorrhages and death.

On November 20, 1963, appellant filed a petition for writ of habeas corpus in the Court of Common Pleas of Cambria County. On November 29, 1963, the petition was dismissed without a hearing on the opinion and order of President Judge GRIFFITH, one of the members of the original court en banc which heard and passed upon appellant's plea of guilty. This appeal followed.

The first question raised by appellant reads as follows: "Did the Court err in accepting a guilty plea without advising the defendant of his right to a jury trial, and the extent of a sentence which could result in a nonjury trial? (Guilty plea)?"

It is pertinent to observe that appellant does not allege that he did not know of his right to a trial by jury or that he was ignorant of the consequences of his plea. He seeks to find error in the court's failure to advise him in these particulars, regardless of his own knowledge of the subject and despite the fact that he was represented by counsel.

Appellant's petition alleges further that "he was led to believe by way of consultation with counsel that the verdict would be voluntary manslaughter, or at the most, second degree murder—Since the crime was

committed during a fight and while he (petitioner) was under the influence of liquor. . . . This petitioner was intimidated by inefficient and negligent defense counsel that scared their client by telling him if he had a jury trial he would die in the electric chair. But if he throwed himself on the mercy of the court he would get no more than Second Degree and possibly a voluntary manslaughter."

Before accepting and acting upon a plea of guilty, a court must be satisfied that the plea is voluntary and intelligently entered. It would be wise for the court to make particular inquiry as to defendant's knowledge of the nature of the charge, of his right to trial by jury, and of the general consequences of his plea. It is desirable to have such matters made known to the defendant by the court even though he be represented by counsel. When a defendant enters a plea to murder, more is required than simply his pleading orally or endorsing the indictment, as in other cases. See Act of May 15, 1895, P. L. 71, §1, 19 P.S. §462. Furthermore, proper administration of criminal justice suggests that the relevant attending facts and circumstances appear of record.

Here, although the court did not specifically make the suggested inquiries, the record circumstances establish defendant's knowledge and awareness of his position before the court. He was not only represented by counsel but also had the benefit, prior to sentence, of having read to him the court's written basis of its findings. That opinion revealed clear-cut reasons why the court did not find a lesser degree of guilt than murder in the first degree.

When asked by the court whether he had anything to say before sentence was pronounced, appellant was given the opportunity to inform the court of his lack of understanding and to advise the court of the erroneous advice which he alleges was given to him. His

failure to speak of those matters at that time now precludes him from asserting an unawareness of what his guilty plea entailed and from attacking the integrity and competency of his counsel more than four years later. Moreover, his statement to the court at that time indicated his awareness of the nature of his crime and of the consequences of his plea and the proceedings before the court. Nothing in the record indicates or even suggests otherwise.

The normal time to have raised questions, had there been any factual basis for them, was when the court invited appellant to speak. The court then could have considered the matters complained of and, if the facts warranted, could have taken suitable action, including a grant of leave to withdraw the guilty plea. See Act of April 15, 1907, P. L. 62, §1, as amended, 19 P.S. §241 (Supp. 1963).

Appellant next complains that his confession was elicited from him when he was suffering from shock, was without benefit of counsel, and was not advised of his privilege against self-incrimination. Accordingly, he urges that it was error to use the confession to gain a conviction. This was not done. The confession was not introduced as substantive evidence. It was merely used by the district attorney in cross-examining appellant with reference to his testimony that he did not recall pulling the trigger of the weapon which killed his son.

Here, defendant, represented by two counsel, entered a plea of guilty before the court. The validity of his prior confession was not involved; only the trustworthiness of his confession in open court was determinative. See *Com. ex rel. Walls v. Rundle,* 414 Pa. 53, 198 A. 2d 528 (1964). The defendant, by his plea, brought about his conviction.

Finally, appellant contends it was error to permit his wife to testify against him because she was in-

competent under the Act of May 23, 1887, P. L. 158, §2(b), as amended by Act of April 27, 1909, P. L. 179, 19 P.S. §683.* This Act provides that neither husband nor wife shall be competent or be permitted to testify against each other, "except that . . . in any criminal proceeding against either for bodily injury or violence attempted, done or threatened upon . . . the minor children of said husband and wife . . ., each shall be a competent witness against the other. . . ." Appellant urges that because his deceased son was over eighteen, he was an adult, and, therefore, his wife was rendered incompetent under the Act.

The opinion of the court below is persuasive: "In Commonwealth v. Clanton, 395 Pa. 521, 527 the court said: 'The Act was intended to make competency the rule and incompetency the exception, and a narrow construction of the Act would often result in suppressing the truth.' In that case the court referred to Hawkins v. United States, [385] U.S. 74, and to Mr. Justice STEWART'S concurring opinion where it was said, 'The rule of evidence we are here asked to re-examine has been called a "sentimental relic". . . . Any rule that impedes the discovery of truth in a court of law impedes as well the doing of justice.' "

The court below also relied on *Pincus Estate,* 378 Pa. 102, 109-110, 105 A. 2d 82, 86 (1954), which said: "A person is not sui juris at any age less than 21 full years regardless of his physique, mentality, education, experience or accomplishments."

We agree with the court below that decedent's son was not an adult (particularly since he was still a member of appellant's household) within the meaning of the Act of 1887, as amended, and that appellant's wife was, therefore, competent to testify.

---

* At the hearing on the plea, no objection was raised to the wife's testimony.

Review of the proceedings on appellant's plea of guilty and sentence affirmatively establishes that his rights were fully, adequately and competently protected. The petition for writ of habeas corpus presents no grounds which merit the holding of a hearing thereon or the issuance of the writ.

Order affirmed.