**UNITED STATES of America ex rel.
LeRoy SMITH H-2149**

v.

**David N. MYERS.**

**Misc. No. 3104.**

United States District Court
E. D. Pennsylvania.

Feb. 23, 1966.

John Francis Gough, Philadelphia, Pa., Court-appointed, for petitioner.

George J. Joseph, Dist. Atty., Wardell F. Steigerwalt, Asst. Dist. Atty., Allentown, Pa., for respondent.

JOSEPH S. LORD, III, District Judge.

We are met preliminarily with a problem of exhaustion since the petitioner took no appeal from the denial of his state habeas corpus petition. A fed-

eral district court is justified in refusing to entertain a state prisoner's habeas corpus petition on the ground of failure to exhaust state remedies no longer open only where there has been a deliberate bypassing of state procedures. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed. 2d 837 (1963).

In this case, the relator is a young man of limited education. He was uncounseled at the time of his state habeas corpus hearing and remained uncounseled thereafter. He was ignorant of state procedure and ignorant of the means by which he could prosecute an appeal from the denial of his state habeas corpus petition. On these facts I cannot find that there has been such a deliberate bypassing of state remedies as would justify the refusal of a federal district court to entertain the petition. We therefore proceed to the merits.

■ The sole ground for relief is relator's allegation that he was unrepresented by counsel at the time of his guilty pleas and sentencing. At a plenary hearing held before this court on December 2, 1965, when relator was represented by appointed counsel, the relator testified that although he had been previously represented by an attorney, Dean L. Foote, Esquire, he had discharged him before he was called upon to plead and that he was therefore unrepresented at the time of his plea and also at the time of sentencing. The discharge of Mr. Foote allegedly occurred at the time of relator's original arraignment on June 20, 1962. Contrary evidence was offered by Mr. Foote and by Honorable James F. Henninger. On the basis of all the testimony, I find the facts to be as follows:

Shortly after the relator's arrest on Bills Nos. 115 and 116, Mr. Foote was retained to represent the relator either by the relator or by some member of his family. The relator was released on bail and while on bail he was arrested and charged with the crimes which were the subject of Bills Nos. 118 and 119. He was unable to make the increased bail that was set and between the time of his original arrest and June 20, 1962, Mr. Foote saw and talked with the relator on approximately five different occasions. At these conferences the relator and Mr. Foote went into all of the details as to what had happened, how it happened, who was involved, the possibility of conviction, the likely sentence, his background, and what would likely happen on a conviction by a jury. Finally, as a result of the various conferences, the relator asked Mr. Foote to try to get him into the Allentown State Hospital. Mr. Foote conferred with the judge in the presence of a district attorney and reported to the relator that he was unable to get a firm answer from the judge but that he had done what he could.

On June 20, 1962, the relator was called into court. He met Mr. Foote in the corridor and the indictments were given to Mr. Foote by the district attorney. Mr. Foote and the relator had a conference and went over the bills of indictment to ascertain that they conformed to the information lodged before the alderman. There were no errors that would warrant moving to quash the indictments. Thereafter, the relator and Mr. Foote sat at counsel table in the courtroom and the relator signed the indictments, indicating his plea of guilty.

When the relator's case was called, the indictments, with the endorsed pleas of guilty, were handed up to the judge and the relator was remitted to the Allentown State Hospital pending sentence. Following his commitment to the hospital, the relator escaped and was later apprehended and charged with prison breach and assault and battery, resulting in Bills of Indictment Nos. 251 and 253. On August 28, 1962, the relator was again brought up for sentence. In the meantime, because of the prison breach, the relator was confined in solitary confinement. However, over the objections of the warden, Mr. Foote insisted that he be allowed to see the relator during that confinement and discussed with him the charges against him. On August 28, when the relator was brought up for sen-

tence, Mr. Foote was present in the courtroom representing the relator. He spoke on behalf of the relator and requested leniency. Whether as a result of Mr. Foote's plea or not, the fact remains that the relator was sentenced by Judge Henninger to less than the maximum sentence which could have been imposed for the crimes to which the relator pleaded guilty.

On all the foregoing facts I cannot but conclude that the relator had the effective assistance of counsel at all the stages of the proceedings. Relator relies upon United States ex rel. McDonald v. Commonwealth of Pennsylvania et al., 343 F. 2d 447 (3 Cir. 1965). Relator's reliance on that case is misplaced. There the question was whether the relator had intelligently waived counsel and had intelligently and voluntarily entered a plea of guilty. The court said, at page 451:

" * * * In such a case, therefore, the question whether the plea of guilty is voluntarily and intelligently made can only be determined if it is shown on the record what comprehension the accused had of the nature and elements of the charge against him, of the defenses available to him and of the consequences which might flow from a plea of guilty (see Commonwealth ex rel. Barnosky v. Maroney, 414 Pa. 161, 165, 199 A.2d 424 (1964)), and these facts should appear on the record at the time the plea of guilty is entered. See Barnosky case, supra, at p. 161, 199 A.2d 424, and the O'Lock case, supra, 415 Pa. at p. 527, 204 A.2d 439. * * *"

It is by no means clear from *McDonald* that the failure of the state trial record to reflect relator's awareness of his rights *ipso facto* voids the conviction. In Commonwealth ex rel. O'Lock v. Rundle, 415 Pa. 515, at page 527, 204 A.2d 439, at page 445 (1964), the court said:

" * * * The proper and efficient administration of criminal justice can be best achieved when the facts regarding waiver clearly appear in the record assembled during the con-

viction proceedings. It is expected that this will be the future practice. * * *"

Similarly, in Commonwealth ex rel. Barnosky v. Maroney, 414 Pa. 161, at page 165, 199 A.2d 424, at page 426 (1964), the court said:

" * * * Furthermore, proper administration of criminal justice suggests that the relevant attending facts and circumstances appear of record. * * *"

Finally, *McDonald* itself merely says that " * * * these facts *should* appear on the record at the time the plea of guilty is entered." (Emphasis added). Thus, *O'Lock, Barnosky* and *McDonald* all sound more cautionary than mandatory. Indeed, in *O'Lock* the court considered both the record of the pleas and the habeas corpus record in concluding that a finding of intelligent and understanding waiver was not supported. 415 Pa. at page 525, 204 A.2d 439. Thus, it does not appear that the silence, the absence or the insufficiency of the state trial record alone will, in and of itself, vitiate the conviction.

Furthermore, the issue in all of those cases was a subjective one: the relator's state of mind. Here, the issue is objective. It is not whether the relator intelligently waived counsel and pled guilty. It is, rather, a simple factual question of whether he was, in fact, represented by counsel. This is a matter that can be found like any other fact on the basis of an evidentiary habeas corpus hearing. Unlike the first type of issue, where the burden of proof is on the Commonwealth [Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962)], the burden of proving that fact is on the petitioner. I hold that he has not sustained that burden.

The court is grateful to John Francis Gough, Esquire, who served as court-appointed counsel for relator and whose dedication and ability were in the highest tradition of the Bar.

Petition denied.