**UNITED STATES of America ex rel. George FINK, E-8912, Appellant,**

v.

**Alfred T. RUNDLE, Superintendent, State Correctional Institution, Philadelphia, Pennsylvania.**

**No. 17396.**

United States Court of Appeals
Third Circuit.

Argued March 6, 1969.

Decided June 24, 1969.

———◆———

Theodore W. Flowers, White & Williams, Philadelphia, Pa., for appellant.

George T. Brubaker, Asst. Dist. Atty., Lancaster, Pa., for appellee.

Before KALODNER, FREEDMAN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

This habeas corpus petition graphically illustrates the undesirability of the practice, widespread until very recently, of accepting pleas of guilty without that penetrating inquiry which searches out the mind of the defendant and clearly

reveals on the record that his plea was made voluntarily and knowingly.

Petitioner was indicted in the Court of Quarter Sessions in Lancaster County, Pennsylvania, on a number of charges. Those before us now were on two indictments for furnishing intoxicants to minors [1] and an indictment containing two counts of corrupting the morals of a minor.[2] He appeared before the court on March 21, 1966 represented by Theodore S. Danforth, the Public Defender of Lancaster County, and pleaded guilty to the three indictments containing the four charges. The record indicates that at the same time two other indictments, one for displaying obscene motion pictures and the other for solicitation to commit sodomy, were also before the court and were nolle prossed. Petitioner was sentenced on the two indictments for furnishing intoxicants to minors to pay a fine, and on one of the counts of corrupting the morals of a minor to pay a fine and undergo imprisonment for not less than one and one-half years and not more than three years, and on the second count was given a suspended sentence and placed on probation for three years.[3]

Petitioner now attacks his pleas of guilty on the ground that he was induced to enter them on his understanding that the other charges would be dropped and that he would be required to serve an imprisonment of nine months. At the hearings held in the District Court he amplified this ground by the claim that he had been led to understand that the sentence of imprisonment for nine months was to represent the total confinement to which he was to be subjected, although he was at that time on parole on another sentence on which he had a further parole period of two and one-half years on a four and one-half year parole. The par-

1. Nos. 88 and 89, Sept. Term, 1965.

2. No. 91, Sept. Term, 1965.

3. Petitioner did not appeal his conviction. However he filed a petition under the Pennsylvania Post Conviction Hearing Act of January 25, 1966, P.L.1580

(1965), 19 Purdon's Pa.Stat.Annot. §§ 1180-1 to 1180-14. His petition was dismissed without hearing. The dismissal was affirmed in a per curiam opinion of the Pennsylvania Superior Court. 210 Pa.Super. 71, 232 A.2d 230 (1967). Allocatur was denied by the Pennsylvania Supreme Court on August 31. 1967.

ties agree that as a result of his pleas of guilty in the present case he is now imprisoned on the sentence from which he was paroled, and that under Pennsylvania law he will be required to serve, not the unexpired portion of his parole, but its full period of four and one-half years before he begins the service of the present one and one-half to three year sentence.[4]

Petitioner claims that the assurance on which he pleaded guilty was breached a few minutes later, when the sentencing judge, who at first imposed a sentence of nine months imprisonment, changed it to one and one-half to three years after the detective who had narrated the prosecution's case recited petitioner's criminal record. If the claim is justified, petitioner has suffered serious injustice from the refusal to set aside his plea of guilty. Instead of a nine months period of imprisonment he has been required to begin anew service of four and one-half years imprisonment on his old sentence on which he was paroled and when that is completed will be compelled to serve the present sentence of one and one-half to three years and thereupon enter on probation for a period of three years.

A transcript of the proceedings, held on March 21 and 22, 1966, was made part of the record in the District Court and is before us. It leaves much to be desired. It shows no plea of guilty by petitioner, but a statement by the Assistant District Attorney that petitioner was pleading guilty, the court's request that a detective state the facts and petitioner's prior record, and its inquiry whether petitioner's counsel had anything to say. Counsel replied in the negative, adding: "We have discussed this fully at side bar. The defendant is aware of the circumstances."

Thus, although petitioner obviously realized that he was being pleaded guilty, the plea came not from him but from his counsel's earlier discussion with the prosecutor, and the allocution was directed not to petitioner but to his counsel.

The next day petitioner was resentenced in what amounted to a change in the place of imprisonment. At that time a colloquy ensued between petitioner and the judge which showed petitioner's concern regarding his parole.

Petitioner testifed in the District Court that he made his pleas of guilty on Mr. Danforth's assurance that he would not be required to serve more than nine months imprisonment, that this indeed was the sentence originally imposed and that it was changed after his criminal record was made known to the court. He claimed also that this nine months sentence was to be the total imprisonment and that the sentence under which he was paroled would be discontinued. There is nothing in the transcript, however, to show that the court had earlier imposed a sentence of only nine months imprisonment, as petitioner claims. But petitioner is corroborated by a letter from Mr. Danforth which informed him that "The first and lighter [sentence] was made without knowledge of your prior record." Mr. Danforth testified in the District Court that it was his recollection that a lighter sentence had initially been imposed.

Mr. Danforth's testimony in the District Court acknowledged that discussions had ensued at side bar between him and the prosecutor with the judge but explained that no agreements were made because those involved believed it would be improper to press their understanding to the point of a binding obligation. There can be no doubt from Mr. Danforth's testimony, however, that petitioner would have been justified in believing that his counsel felt that if he pleaded guilty to the designated charges, the others would be nolle prossed and he would

---

4. Habeas corpus lies, of course, although petitioner's present confinement is on the sentence on which he has been paroled and which was reactivated by his plea of guilty. Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968).

suffer a relatively short period of imprisonment.[5]

The District Court held that the burden rested on petitioner to prove that "the trial judge had made a promise or commitment to petitioner which was not kept and which induced the guilty plea." 293 F.Supp. 1124, 1125 (E.D.Pa.1968). In so allocating the burden of proof the District Court fell into error.

In Pennsylvania where these criminal proceedings occurred the Supreme Court in a number of cases urged trial courts to conduct a full on-the-record examination of a defendant who pleads guilty, to determine whether he fully understands the nature of the charges against him, the acts which are sufficient to constitute the offense charged, and the permissible range of sentence.[6]

These requirements are now incorporated in Pennsylvania's amended Rule of Criminal Procedure 319(a).[7] The Pennsylvania Supreme Court refused to create a prophylactic rule which would render the plea invalid if the sentencing judge failed to conduct an on-the-record colloquy with the defendant which demonstrated that his plea of guilty was entered knowingly. The court believed that such a rule would invalidate many pleas of defendants who fully understood the relevant circumstances although there was no on-the-record inquiry because at

---

5. "Q. And is it a correct statement that he was advised if he would plead guilty to these particular charges that certain other charges would be nolle prossed and that he would receive a lighter sentence?
A. Not a lighter sentence. He would receive the sentence that we had discussed. This is what I would tell him.
Q. He—
A. Just what the Court indicated to me.
Q. Excuse me, Mr. Danforth: that he would receive a certain sentence if he plead guilty?
A. Well certainly.
I have never, and I think George will agree with this, made any guarantee that this was what the sentence was going to be. I related the understanding that I had of what sentence the Court would impose, and in this case I related to Mr. Fink that if he plead guilty and certain of those charges are dropped, the Court indicates that the sentence will be whatever it happened to be in this case.
Q. So that in this case, to the best of your recollection, the information which you transmitted to Mr. Fink of a certain sentence was based on what you were advised by the Court?
A. That is correct.
Q. And that he was advised that a certain sentence would be imposed if he did plead guilty to certain charges?
A. I don't think quite as strongly as that, but he was told that was my understanding of what the Judge's sentence would be.
Q. I take it from these proceedings that you were present when the heavier or the second sentence was imposed?
A. Yes."
*   *   *   *   *
"Q. Mr. Danforth, if a promise had been made by the Judge in this case or by the District Attorney's office and if that promise had been broken, would you remember it?
A. I think I would remember it. I do remember it in this situation but it is—as you and I know, it is never a promise. That is probably the very reason why no conversation appears in the transcript or the sentencing as to the possible change in what was my understanding of what the sentence would be and what was finally imposed because you couldn't address the Court and say: 'You promised this and now you have changed your mind.'"
*   *   *   *   *
"Q. You stated that you do not make it a practice of making any promises to accused in these cases; however, under the circumstances, if your recollection serves you, was it or was it not reasonable for the relator in this case to assume that the understanding between you and the Court would be honored provided he plead guilty to the charges as designated?
A. Very definitely."

6. Commonwealth ex rel. West v. Rundle, 428 Pa. 102, 237 A.2d 196 (1968); Commonwealth ex rel. West v. Myers, 423 Pa. 1, 5, n. 3, 222 A.2d 918, 921, n. 3 (1966); Commonwealth ex rel. Barnosky v. Maroney, 414 Pa. 161, 165, 199 A.2d 424, 426 (1964).

7. The rule was adopted June 30, 1964, effective January 1, 1965 (415 Pa. xci) and the amendment was adopted November 25, 1968, effective February 3, 1969, 432 Pa. xxxiii, the amendment does not apply to this case, in which the plea of guilty was entered before its adoption.

that time such a requirement did not exist.[8] It was ultimately led, however, to give the rule limited retrospective effect, holding that in cases where the hearing occurred after the court had announced that its ruling would be mandatory for the future, the absence of an appropriate on-the-record inquiry "served at least to shift the burden of proof to the Commonwealth." Commonwealth v. Cushnie, 433 Pa. 131, 135–136, 249 A.2d 290, 293 (1969).

We reviewed this problem very recently in United States ex rel. McCloud v. Rundle, 402 F.2d 853 (3 Cir. 1968).[9] There no transcript existed of the state proceeding held many years earlier at which the pleas of guilty were entered. Judge Forman speaking for the court said:

> "[T]he strong presumption of constitutional regularity which attaches to a state court conviction when collaterally attacked, may be overcome where there is no record of the state court proceedings or where such a record does exist, but shows that the trial court did not properly question the defendant on accepting his plea." (p. 857)

In the circumstances of that case we held that the burden of proof that petitioner's guilty pleas were voluntary rested on the Commonwealth. So here, although there is a transcript it does not reflect a full inquiry by the court of the petitioner regarding his understanding of the pleas of guilty, and the burden, therefore, fell on the Commonwealth to prove that petitioner did not enter the pleas in reliance on any plea bargain which was not fulfilled.

The case therefore must be remanded to the District Court so that petitioner's claim may be judged from a perspective where the burden of proof rests on the Commonwealth.

8. Commonwealth ex rel. West v. Rundle, 428 Pa. 102, 237 A.2d 196 (1968) ; Commonwealth v. Cushnie, 433 Pa. 131, 134, 249 A.2d 290, 292 (1969).

9. See also, United States ex rel. Crosby v. Brierley, 404 F.2d 790 (3 Cir. 1968).

We point out for the purpose of the remand that the issues presented are broader than whether a "commitment" had been made by the sentencing judge to petitioner's counsel. An additional issue is whether the plea of guilty was induced by an unfulfilled agreement between the prosecution and petitioner's counsel that the sentence would not be more than nine months imprisonment.

The full range of the issues extends beyond the claims of a "commitment" by the trial judge or one made by the prosecution, which were not fulfilled. As issue presented, which the District Court did not consider, is whether petitioner was ignorant that his plea of guilty would impose upon him imprisonment for the remainder of the prior sentence on which he had been paroled. It is not clear whether this claim was made in the State court and if so, whether petitioner exhausted his State remedies regarding it. The question of exhaustion of this claim, as well as its merits if State remedies have been exhausted, will be for the District Court's determination.

The judgment of the District Court will be reversed and the cause remanded for further proceedings consistent with this opinion.[10]

KALODNER, Circuit Judge (dissenting):

I would affirm the Order of the District Court denying the relator's habeas corpus petition for these reasons:

The hard core of relator's petition is that he "was induced by [his] counsel to enter a compromise guilty plea with the understanding that a sentence not exceeding nine (9) months would be imposed," in contrast to the one and a half to three years sentence actually imposed by the state trial court.

10. The District Court will consider the effect of the decision just handed down by the Supreme Court in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, and compare it with McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) and Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969).

The District Court, after a hearing at which the relator and his counsel testified, and the transcript of the state sentencing proceeding was introduced in testimony, found that the relator's aforestated contention was without merit and that "the plea of guilty was entered voluntarily". While the District Court erred in stating in its Opinion [1] that "The burden of persuasion rests upon the defendant who seeks to withdraw his plea," the error is harmless in the instant case since the state sentencing record, and that below, clearly establish the correctness of the District Court's findings on the score of the relator's contentions.

The relator's contentions with respect to his "understanding" of the sentence he was to receive, and that he did not know he would have to serve time for violation of his parole, are established as groundless by the following quoted transcripts of the sentencing and re-sentencing proceedings:

"The Court: Mr. Fink, as you realize, you have a pretty serious record here. You are aware of that fact are you not?

"Defendant Fink: Yes sir.

"The Court: And you are not charged as seriously in this present charge as you were on other charges which you appeared before this Court on, and for that reason and that reason only the sentence of this Court will probably not be as severe as it was on the prior charges when you came in here on forgery, larceny and sodomy." (Initial sentencing proceeding).

* * * * * *

"The Court: On Complaint No. 91 September Term, 1965, Commonwealth v. George Galen Fink, charged on two counts with corrupting the morals of minors, in the first count I sentence you to undergo imprisonment—to pay a fine of fifty dollars, to undergo imprisonment in the Lancaster County Prison for a period of not less than eighteen months nor more than three years. I suspend sentence on the second count and place you on probation for a period of three years.

"On the charge of furnishing intoxicants to minors, Complaint No. 88 September Term, 1965, I sentence you to pay a fine of one hundred dollars. On Complaint No. 89 September Term, 1965, the same offense, I sentence you to pay a fine of one hundred dollars and in both cases to pay costs of prosecution and stand committed until these sentences are complied with, and each of these three sentences are to run consecutively and not concurrently.

"Defendant Fink: May I say something? Are you taking into consideration the fact that I have this parole?

"The Court: What? I am taking into consideration the fact that you still are subject to imprisonment for violation of your parole and for that reason I have not sentenced you to any imprisonment on the second count of corrupting the morals of a minor.

"Defendant Fink: Which parole are you taking into consideration? I have already done the two years. Now, if I am to go back there—

"The Court: You will have to serve your parole violation before you start serving these sentences.

"Defendant Fink: That's what I am telling you. I have four and a half years.

"The Court: I know. I took that into consideration when I imposed this sentence. These are serious charges. If you did not have time to serve on your parole violation, I probably would have sentenced you to imprisonment on the second count of corrupting the morals of minors on which I have put you on probation. You are being sentenced now to only a year and a half in prison and the violation of your parole is a matter that the parole authorities have to take up." (Resentencing proceeding.)

The District Court's Opinion discloses that it considered the quoted sentencing

---

1.  The Opinion of the District Court is reported at 293 F.Supp. 1124 (E.D.Pa.1968).

record in rejecting relator's contention that he did not understand the consequences of his guilty plea, and this negates the majority's statement that:

"An issue presented, which the District Court did not consider, is whether petitioner was ignorant that his plea of guilty would impose upon him imprisonment for the remainder of the prior sentence on which he had been paroled."

It is pertinent to point out that the state trial judge who denied relief to the relator in the latter's Post Conviction Hearing Act[2] proceeding, considered and rejected as without merit the identical contention presented in the instant habeas corpus petition, and that the Pennsylvania Superior Court at 210 Pa.Super. 71, 232 A.2d 230 (1967), in affirming, specifically considered and found the relator's contention groundless. As the majority has noted, allocatur was denied by the Pennsylvania Supreme Court.

This, too, must be said on the score of the majority's statement that:

"This habeas corpus petition graphically illustrates the undesirability of the practice * * * of accepting pleas of guilty without that penetrating inquiry which searches out the mind of the defendant and clearly reveals on the record that his plea was made voluntarily and knowingly."

I agree with the majority's statement that a record must clearly reveal that a guilty plea was made "voluntarily and knowingly" but disagree with its holding that the record in the instant case fails to disclose that the relator's guilty plea was "voluntarily and knowingly" made.

The evidence establishes that the relator was an habitual criminal who had previously suffered imprisonment following convictions on indictments charging him with sodomy, larceny and forgery. He candidly admitted on his cross-examination in the instant proceedings that he had "quite a few" "brushes with the law before" and that he "knew what a guilty plea was."[3]

The majority's disposition in the instant case compels this observation:

Judicial enforcement of constitutional due process guarantees should be discriminatingly and clinically premised on

2. 19 P.S. § 1180–1 et seq.

3. On cross-examination in the court below, by Mr. Rutherford from the Office of the District Attorney of Lancaster County, Pennsylvania, the relator testified in relevant part as follows (pp. 36–37–38 N.T.) :
"Q. Did you know what you were doing what you plead guilty?
"A. I based my plea on—
"Q. Will you answer my question?
"A. —on Mr. Danforth's assurance that that is exactly what would happen.
"Q. No, but nobody held a gun to your head?
"A. No.
"Q. Nobody forced you to do this; is that correct?
"A. I didn't say they did. No.
"Q. And you have had a few brushes with the law before?
"A. That is right.
"Q. In fact, quite a few; is that correct?
"A. That is right.
"Q. So you knew what a guilty plea was?
"A. Yes.
"Q. You knew that when you plead guilty that you were admitting that you did the things that you are charged with; is that correct?
"A. I plead guilty to—

"Q. Will you answer my question?
"The Court: Just answer the question, Mr. Fink, and then you can explain.
"Q. No.
By Mr. Rutherford:
"Q. You are telling us now that when you plead guilty you did not know that you were admitting what you were charged with?
"A. I admitted only the guilty plea on the strength of the nine months sentence. Believe me.
"Q. But you knew, though, what a guilty plea meant?
"A. Yes. I said 'yes'.
"Q. So regardless of what your motivation was, you knew what a guilty plea meant?
"A. Yes.
"Q. You knew that a guilty plea meant you were saying: 'Yes, I did what you are accusing me of having done'?
"A. Yes.
"Q. You knew that?
"A. Yes.
"Q. And you consider yourself to be a person of average intelligence? You don't consider—
"A. I imagine so."

the facts presented in a particular case, and not in blind homage to currently prevailing sweeping due process doctrine which regrettably fails to accord cognizance to the "general welfare" clause of the Preamble to the Constitution.